# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

MICHAEL S. BRYANT,                                  Case No. 1:13-cv-584

          Plaintiff,                                  Barrett, J.
                                         Bowman, M.J.
   v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Michael S. Bryant filed this Social Security appeal in order to challenge the Defendant's finding that he was not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. As explained below, the ALJ's finding should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

### I.  Summary of Administrative Record

Plaintiff initially filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") in January 2008, alleging disability beginning November 30, 2006 based upon a combination of mental and physical impairments. Those applications were denied initially and upon reconsideration, and, ultimately, in a written decision after an evidentiary hearing before Administrative Law Judge ("ALJ") Paul E. Yerian. (Tr. 89-101). Plaintiff did not appeal ALJ Yerian's April 23, 2010 decision, and that decision remains *res judicata* for purposes of this proceeding. *See* Acquiesance Ruling ("AR") 98-4(6); *Drummond v. Com'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997).

Plaintiff filed new DIB and SSI applications on May 25, 2010, alleging that he became disabled on April 24, 2010, due to worsening of his condition. Plaintiff remained insured for purposes of DIB only for two months beyond his most recently alleged disability onset date;[1] and therefore must establish disability on or before June 30, 2010 in order to obtain DIB. (Tr. 23). Plaintiff's second applications were denied initially and upon reconsideration, and he timely requested an evidentiary hearing.

On March 8, 2012, Plaintiff, through counsel, appeared and testified at a hearing in Cincinnati, Ohio held before Administrative Law Judge ("ALJ") Peter J. Boylan. An impartial vocational expert also appeared and testified. On April 10, 2012, ALJ Boylan issued an unfavorable written decision. (Tr. 23-33). The ALJ determined that Plaintiff has the following severe impairments: "morbid obesity; degenerative disc disease of the lumbar and thoracic spines; coronary artery disease, status post two stents in the right coronary artery; subacrominal bursitis of the right shoulder with proximal biceps rupture; a mood disorder; borderline intellectual functioning; somatoform disorder; and a personality disorder." (Tr. 25). However, he held that Plaintiff does not have an impairment or combination of impairments that would meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appx. 1. (Tr. 27). Instead, he found that Plaintiff retains the residual functional capacity ("RFC") to perform a range of unskilled light work, further limited as follows:

> [H]e can perform occasional crouching, crawling, or climbing of ramps or stairs, and he can never climb ladders, ropes, or scaffolds. The claimant is limited to simple, routine work that does not involve strict quotas or heavy production schedules. He is limited to simple work-related decisions. The claimant is limited to occasional interaction with

---

[1]Based on the prior decision, April 24, 2010 is the earliest disability onset date that Plaintiff could allege.

supervisors, coworkers, and the public, and is limited to superficial contacts. He has limited reading and writing skills, but is literate in English.

(Tr. 29).

In contrast to the ALJ's findings, Plaintiff claims that he is disabled because he meets criteria for a listing for mental retardation, and/or alternatively because of his combination of depression, low IQ, and back and heart problems. He testified at the hearing that he was primarily disabled due to his back pain.

The ALJ agreed that Plaintiff could no longer perform any of his past relevant work as a carpenter, janitor, construction worker, or cable television installer. (Tr. 31-32). At 47, Plaintiff was considered to be a "younger individual" both on his alleged disability onset date and at the time his insured status expired, although he had changed age categories to "closely approaching advanced age" and was 49 years old by the time of the ALJ's decision. (Tr. 32). He has a limited education, having completed the eleventh grade. (Tr. 32). Based upon testimony from the VE and the record as a whole, the ALJ determined that Plaintiff could still perform jobs that exist in significant numbers in the national economy, including such representative jobs as an inspector, a packer, or a cleaner. (Tr. 32-33). Even if limited to sedentary exertion, the VE testified, and the ALJ alternatively appeared to find, that Plaintiff would be able to perform the jobs of order clerk, cashier, or inspector. (*Id.*). The Appeals Council denied Plaintiff's request for further review; therefore, the ALJ's decision remains as the final decision of the Commissioner.

In his appeal to this Court, Plaintiff argues that the ALJ erred by: (1) failing to find him to be disabled under Listing 12.05C for mental retardation; and/or (2) failing to

consider the full impact of the combination of Plaintiff's impairments, particularly his degenerative disc disease and his morbid obesity.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920. A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. §404.1512(a).

**B. Specific Errors**

**1. Listing 12.05C**

Plaintiff first argues that the ALJ erred by failing to find that he met or equaled the listing for mild mental retardation under Listing 12.05C. The listing requires: (1) "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e.,…before age 22"; (2) a "valid verbal, performance, or full scale IQ of 60 through 70"; and (3) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.05C.

On the record presented, there is no dispute that Plaintiff has at least one qualifying IQ score, and at least one other "severe" physical impairment. In his decision of April 23, 2010, ALJ Yerian relied in part on IQ test results that showed a verbal IQ score of 70, a performance IQ of 76, and a full scale IQ of 71, most of which scores fall within the "borderline" range rather than the lower mental retardation range. (Tr. 92, 94). Plaintiff cites additional IQ scores ranging from 65 to 80 from school records,[2] some of which were presented as additional evidence for the first time to the Appeals Council. (Tr. 241, 279, 366, 372). To the extent that the Appeals Council denied review, evidence that presented for the first time to that body may not be reviewed by this Court for purposes of determining whether substantial evidence exists to uphold the administrative decision. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). In any event, the additional scores do not impact this Court's analysis. Notwithstanding ALJ Yerian's reliance in 2010 on a number of scores that exceeded 70, both ALJs acknowledged the existence of at least one score of 70 or below, and only one qualifying score is required to meet the minimum qualifications for Listing 12.05C.

Despite the existence of at least one qualifying score, both in 2010 and again in 2012, the ALJs determined that Plaintiff exhibits "borderline" intellectual functioning rather than Listing level mental retardation, primarily because he does not exhibit the third necessary criteria: current deficits of adaptive functioning, which manifested themselves prior to age 22.

---

[2]Many courts have commented on the generally accepted stability of adult IQ scores over time, absent some intervening event such as a brain injury. By contrast, a "low IQ score, in itself, is not evidence of 'subaverage intellectual functioning or deficits in …adaptive functioning during [the plaintiff's] developmental period." *Bailey v. Com'r of Soc. Sec.*, 2013 WL 2286962 at *5 (S.D. Ohio, May 23, 2013)(quoting *Turner v. Com'r of Soc. Sec.,* 381 Fed. Appx. 488, 491-492 (6th Cir. 2010)).

As a practical matter, whether a claimant meets or equals any portion of Listing 12.05 often relies upon what evidence supports - or conversely, undermines - a finding of deficits in adaptive functioning. Many people with an IQ score lower than 70 remain capable of full-time work and therefore do not meet the Listing. *See Thomas v. Com'r of Soc. Sec.*, 2010 WL 1254788 *8 (N.D. Ohio, March 24, 2010)(recognizing that "many individuals with mildly mental retardation are still able to work"). As with the burden of proof for all listings, the claimant bears the burden of proving past and present deficits in adaptive functioning sufficient to satisfy Listing 12.05 at the administrative level. At this judicial review stage, a plaintiff's burden is "much higher," to the extent that a plaintiff must show that the finding the ALJ made is not supported by substantial evidence. *Carter v. Com'r of Soc. Sec.*, 2012 WL 1028105 at *6 (W.D. Mich., March 26, 2012). In contrast to the relatively uncontested issue of Plaintiff's qualifying IQ score, Defendant vigorously contests Plaintiff's position that he has proven deficits in adaptive functioning.

ALJ Yerian, in his unappealed 2010 decision, emphasized that Plaintiff did not exhibit any deficits in adaptive functioning. (Tr. 94). ALJ Boylan similarly determined in his April 10, 2012 decision that Plaintiff functioned in the "borderline" intellectual range based upon his lack of deficits in adaptive functioning, which precluded him from meeting Listing 12.05C.

It is worth noting that no psychologist or physician has ever diagnosed Plaintiff as mentally retarded despite his "qualifying" IQ scores. Both Aracelis Rivera, Psy.D. and Karen Steiger, Ph.D., reviewed Plaintiff's records and opined that Plaintiff did not meet or equal Listing 12.05C. (Tr. 113, 116, 139-140, 143). ALJ Boylan specifically cited to the most recent psychological evaluation, performed in August 2010, which estimated that Plaintiff was functioning in the "low average range," even higher than the borderline

functioning found by the ALJ. (Tr. 29). Such evidence is not conclusive, since the listing does not *require* that a plaintiff submit proof of a formal diagnosis of mental retardation. Nevertheless, because adaptive functioning is used to diagnose mental retardation, courts within the Sixth Circuit have considered the lack of any such diagnosis as one of several factors relevant to the determination of whether a claimant meets or equals Listing 12.05. *See, e.g., Hayes*, 357 Fed. Appx. at 676 (noting that no school records, and no therapist or psychologists, had ever mentioned mental retardation or intellectual deficiencies); *cf. Cooper v. Com'r of Soc. Sec.*, 217 Fed. Appx. 450, 452 (6th Cir. 2007); *Daniels v. Com'r of Soc. Sec.*, 70 Fed. Appx. 868, 873-874, 2003 WL 21774004 (6th Cir. 2003)(claimant, absent IQ scores before the age of 22, did not have required deficits where three psychologists agreed that Plaintiff was of low intelligence but not mentally retarded).

Although Plaintiff focuses in part on his alleged deficits in adaptive functioning in childhood, it is clear that both ALJs focused more on the issue of whether Plaintiff had proven that he currently exhibits deficits in adaptive functioning. The regulation requires a showing of both current and past deficits in adaptive functioning.

In *Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001), the Sixth Circuit clarified the "adaptive functioning" standard. In that case, the plaintiff had dropped out of school after the ninth grade and had two sets of qualifying IQ scores, but there was no evidence of deficits in adaptive functioning before age 22, and the plaintiff's prior work demonstrated "that she had the ability to perform relatively complicated tasks." *Id.* at 355. "Adaptive functioning" involves an individual's "effectiveness in areas such as social skills, communication, and daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age

by his or her cultural group." *Heller v. Doe by Doe*, 509 U.S. 312, 329, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993), citing Diagnostic and Statistical Manual of Mental Disorders, pp. 28–29 (3d rev. ed.1987). To that extent, adaptive functioning differs from "academic" functioning. *West v. Com'r of Soc. Sec.*, 240 Fed. Appx. 692, 698 (6th Cir.2007) (citing *Heller*, and holding that plaintiff who held a long term, full-time job, with many activities of daily living, did not show deficiencies in adaptive functioning). "The American Psychiatric Association defines adaptive-skills limitations as '[c]oncurrent deficits or impairments ... in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.'" *Hayes v. Com'r of Soc. Sec.*, 357 Fed. Appx. 672, 677 (6th Cir.2009), citing DSM–IV–Tr at 45.

ALJ Yerian found no deficits in adaptive functioning, reasoning as follows:

I do not find that the claimant has deficits in multiple areas of adaptive functioning, as required by the Listing. For example, his academics are adequate, he has done semi-skilled work for a number of years, he has been married twice and lived away from his parents, and he has a driver's license. Further, during a psychological consultative examination in 2008 the claimant was found to have adequate social skills. He has also reported leisure activities including shooting pool, hunting, fishing, and bowling. Therefore, deficits in adaptive functioning are not present.

(Tr. 94). As the above analysis illustrates, ALJ Yerian focused primarily on the lack of deficits in adaptive functioning in Plaintiff's adult life.

In the decision appealed in this proceeding, ALJ Boylan agreed that Plaintiff failed to demonstrate any deficits in adaptive functioning in his adult life, and that he instead functions at the borderline intellectual level. The ALJ specifically rejected Plaintiff's argument that the semi-skilled and skilled level jobs that he performed in the

past should not be viewed as evidence of higher intellectual functioning, merely because Plaintiff had testified that those jobs were performed "with assistance."

> The claimant testified that he would occasionally get assistance on jobs from his friend Jerry who was also his supervisor, and that his girlfriend rode along with him to complete the paperwork when he installed television cable services. However, especially in the case of the cable installation job, the claimant's girlfriend did not install the cable, which is considered a skilled job.

(Tr. 29). The ALJ also pointed out that plaintiff testified that he could no longer perform the job, not because of any intellectual challenges, but instead because he was not physically able to carry around the ladder as required. (*Id.*).

Turning first to his childhood, Plaintiff argues he had deficits in adaptive functioning that manifested themselves prior to the age of 22, based upon his special education classes, emotional immaturity, and academic deficits, all of which were documented in his teen years. (Tr. 241-244). He asserts that based on those high school records, he "clearly had significant deficits in emotional maturity" during those years. (Doc. 9 at 11). He further argues that he had deficits in academic and communicative functioning in elementary school, to the extent that he repeated first grade, and was placed in special education beginning in the eighth grade, with consistently low word recognition and reading comprehension scores, and similarly low math scores.

As discussed above, "adaptive skills" are defined differently than "academic skills," a distinction that Plaintiff's arguments do not fully address. It is unclear whether all of the school records on which Plaintiff now relies may be considered by this Court, to the extent that at least a portion of those records were submitted for the first time to the Appeals Council, and were not before the ALJ. *See Cotton v. Sullivan*, 2 F.3d at

696. Regardless, the school records on which Plaintiff relies to prove childhood deficits in adaptive functioning undermine his argument as much as they provide support for it. *See, e.g.*, Tr. 242, noting that Plaintiff "is functioning in the <u>lowest range of normal intelligence</u>," and Tr. 245, noting that Plaintiff's "test performance was in the <u>low-normal intellectual functioning</u>.")(emphasis added). More importantly, proving childhood deficits is not sufficient to satisfy the listing. Rather, and as the focus of both ALJ's decisions reflect, Plaintiff was required to show deficits in adaptive functioning in his adult life that preclude his ability to work. Because substantial evidence supports the 2012 determination that Plaintiff did not show such deficits, the undersigned finds no error in the ALJ's conclusion that Plaintiff does not meet or equal Listing 12.05C.

In arguing to the contrary, Plaintiff focuses on his work history, which he contends was overstated by the ALJ. Plaintiff argues that the ALJ committed erred by finding that his prior work as a cable installer was skilled. He claims that "the only thing he did was run cable from the poles to the houses…, drilling holes through the floor or in the foundation of a house as was needed." (Doc. 9 at 12, citing Tr. 46-47). He learned by observing other technicians perform the job during the first month, and quit after suffering a shoulder injury.

The Vocational Expert testified at the 2012 hearing that the cable installation job was performed at the "heavy" level of exertion by Plaintiff, and that it has an SVP of 5, which reflects a "skilled" level. (Tr. 76, 79). In the earlier 2010 decision, however, the same job was identified by a different VE as DOT code 821.667-101, with an SVP level of "3," reflecting "semi-skilled" work. Plaintiff attempts to further challenge even the "semi-skilled" level of "3" found in 2010, based on his 2012 testimony that he received

only one month of training.[3]  Plaintiff additionally argues before this Court that in his prior construction-related work, he performed his tasks with the assistance of his supervisor-friend Jerry, or under the supervision of his ex-girlfriend's father.  (Tr. 60-65). Plaintiff implies, without direct argument, that he may have performed those jobs at the "unskilled" level rather than the semi-skilled level to which the VE testified.

Plaintiff did not challenge the VE's classification of the cable installation job or the skill level of any other jobs at the evidentiary hearing.  Defendant argues that he therefore has thus waived consideration of this issue.  *See e.g., Silvas v. Astrue*, 2012 WL 3930369 (E.D. Mich., July 21, 2012)(finding waiver based on failure to challenge VE testimony regarding skill level at hearing).

Plaintiff did challenge the ALJ's classification of the cable installation job in his written appeal to the Appeals Council.  (Tr. 373-377).  Although new evidence that was not presented to the ALJ may not be reviewed by this Court for purposes of determining whether substantial evidence exists to uphold the administrative decision, *see Cotton v. Sullivan*, 2 F.3d at 696, the same is not always true of legal arguments presented to the Appeals Council that do not rely upon new evidence.  *See generally Sims v. Apfel*, 120 S. Ct. 2080 (2000).  With respect to VE testimony, a failure to develop the record through questioning of the VE at the hearing level sometimes results in waiver, but not always.  On the record presented, it is unnecessary to decide the waiver issue, because even assuming that counsel adequately preserved the issue at the Appeals Council level, the undersigned finds no reversible error.[4]

---

[3]Counsel's brief to the Appeals Council argued that Plaintiff had two months of training.

[4]That said, Plaintiff undoubtedly is precluded from challenging the VE's testimony back in 2010 that the cable installation job was a semi-skilled level of "3."

12

Although the VE did not specifically identify a DOT number at the 2012 hearing, he testified as to the skill level involved in a manner consistent with the listed job of "cable television installer," the same job title described by Plaintiff, listed at DOT 821.281-010.[5] That job is listed at the skill level of "5" not because of any "programming" requirement as Plaintiff suggests, but instead, as the ALJ suggested, because of the technical and electrical skills required to physically install the wires. And, as the Plaintiff concedes, ultimately the DOT provides only general guidelines, and the VE's testimony is controlling to the extent that it is supported by the VE's experience and professional knowledge. Last, it is worth noting that even unskilled work can be evidence of a lack of deficits in adaptive functioning, particularly where a plaintiff exhibits a lengthy employment history. *See e.g., Justice v. Com'r of Soc. Sec.*, 515 Fed. Appx. 583, 587 (6th Cir. 2013)(noting evidence of "lengthy work history, including a variety of semiskilled and unskilled positions.").

Here, Plaintiff's work history, which spanned fifteen years and included at least semi-skilled jobs, exhibits a significant level of adaptive functioning, as does his social history. The record reflects that Plaintiff has been able to develop and maintain relationships, having been married twice. There is no evidence that he has ever been dependent on others for personal needs like toileting, eating, dressing or bathing, or that he is unable to follow simple directions as determined by the ALJ. (Tr. 28). Although Plaintiff presently lives with his elderly mother, he previously has lived independently, has been able to manage his own money, make his own decisions, and independently take care of his own personal needs, without any supervision or assistance in his

_____

[5]The DOT number identified by the VE in 2010 corresponds with the job of "electrical helper," rather than

activities of daily living. (Tr. 43, 56-57, 316, 1121). He performs household chores, including mowing the lawn, prepares simple meals, shops for groceries, and helps care for his dog. (Tr. 315-317). Despite occasional interpersonal difficulties, Plaintiff has been able to maintain relationships with former wives and girlfriends, visits friends occasionally, has attended Reds games, and goes to restaurants. (Tr. 318). Plaintiff has a driver's license, has never reported difficulties in maintaining employment based on any cognitive (as opposed to physical) impairment, and reported that he was able to maintain his activities of daily living without assistance. Thus, substantial evidence favors the ALJ's decision that Plaintiff has not exhibited the kind of deficits in adaptive functioning that are required to meet the presumptive disability listing under Listing 12.05C.

### 2. Consideration of Combination of Impairments as a Whole

Plaintiff's second claim of error is that the ALJ failed to consider the combined impact of all of his impairments. He focuses on two physical impairments in particular: his degenerative disc disease, and his obesity.

### a. Degenerative Disc Disease with Neurogenic Claudication

Plaintiff argues first that the ALJ erred by failing to find that his back condition had deteriorated since the earlier 2010 decision, warranting any significant change in the prior RFC. (Tr. 30-31). "[T]here is no evidence since that time [the April 2010 decision] to suggest major changes." (Tr. 30). Plaintiff argues that his records include evidence of "multiple spinal injections," including at the L5-S1 level on December 9, 2009. However, those records obviously preceded the April 2010 decision. Plaintiff

---

"cable television installer."

also cites to two epidural steroid injections at the same L5-S1 level on October 5, 2010 and on June 8, 2011. Plaintiff notes that he had two additional appointments scheduled, which were cancelled for various reasons. Plaintiff relies on this evidence to support his contention that he "never obtained more than a few months of partial relief" and that his chronic pain was otherwise disabling.

However, as Defendant points out, the record shows that Plaintiff often failed to comply with prescribed treatment. Although Plaintiff testified that his failure to comply was due to his lack of insurance (Tr. 72), the ALJ noted numerous instances where Plaintiff failed to show up for his scheduled appointments. (Tr. 30, Tr. 1127, 1262, 1265, 1270). On one occasion, Plaintiff's treating physician expressed concern that Plaintiff was not "prioritiz[ing]" his pain treatment. (Tr. 1438). Another record stated that Plaintiff did not take his medication because he "did not want to wait in line at the pharmacy." (Tr. 1270). Such evidence supports the ALJ's conclusion that Plaintiff's symptoms were not as severe as alleged.[6] (Tr. 30).

Plaintiff also argues that the ALJ failed to adequately account for his difficulty in standing and walking. Plaintiff admits that he has no clinical findings associated with radiculopathy caused by herniated discs and compressed nerves, but he points to his consistent reports that he reported radiating pain when he stands and/or walks for "extended" periods of time. (*See* Tr. 909, 919, 1041, 1127). Plaintiff also relies on 2007 and 2009 MRI reports that show severe spondylosis and disc herniations at L4-5 and L5-S1, with compression of his L5 nerve roots, as well as a January 2009 MRI that

---

[6]Plaintiff argues that declining to stand in line was reasonable because to do so might have increased his pain. Similarly, he excuses his failure to show up at appointments as a reasonable reaction to "bad days." There is no evidence in the record to support these speculative post-hoc rationalizations. The ALJ's evaluation of the credibility of Plaintiff's subjective complaints was reasonable in view of the record

shows problems in his thoracic spine.  Again, those MRI reports predate the 2010 decision and to that extent, do not show a worsened condition since his alleged disability onset date.

While Plaintiff does not challenge the assessment that he did not meet or equal a listing, he argues that the ALJ nevertheless should have found that his condition has deteriorated since the prior 2010 decision, and for that reason should have incorporated additional RFC limitations. Plaintiff relies in part upon his diagnosis of "neurogenic claudication."  That diagnosis was made in 2009, prior to the adverse 2010 decision, (Tr. 912), although it is repeated in 2011 Pain Clinic records after that decision.  (Tr. 1127).  A mere diagnosis is not evidence of disability.  *See e.g., Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  Because the ALJ proceeded to the next steps of the sequential analysis, any failure to include "neurogenic claudication" at Step 2 does not provide grounds for reversal.

All the same, Plaintiff argues that the ALJ failed to recognize that common symptoms of a neurogenic claudification diagnosis provide support for his reports of increased pain and sometimes weakness in the legs when standing or walking for "extended" periods.  Plaintiff asserts that the ALJ should have limited him to sedentary exertion, or at least have included a sit/stand option and/or other standing/walking limitations.

The undersigned concludes, however, that the ALJ reasonably determined that Plaintiff's subjective complaints were not fully consistent with the evidence.  (Tr. 30). Plaintiff's failure to fully comply with prescribed pain treatment has been discussed.

---

as a whole.

Plaintiff has not identified any medical evidence that he experienced pain and/or weakness in his legs to such a degree that he could not perform the standing and walking requirements of light work. In addition to his inconsistent compliance with treatment, a musculoskeletal examination showed relatively normal findings just three months prior to the evidentiary hearing. (Tr. 30, citing Tr. 1401-1405).[7] At that time, Plaintiff had no thoracic tenderness, only mild pain over the right lumbar paraspinal muscles, full range of motion, and normal strength. (Tr. 1402). Examination of Plaintiff's cervical spine also showed relatively mild findings. (Tr. 1402). Neurologically, Plaintiff's tone was intact, he had a steady gait, and could perform heel toe walking. (Tr. 1403).

In addition, Karen Krone, M.D., Plaintiff's treating pain management specialist, declined to complete a physical RFC form or to offer opinions on work-related limitations, (see Tr. 1127-30), instead writing "N/A" on the forms, a fact noted by the ALJ. (Tr. 31). Plaintiff argues that Dr. Krone "merely declined to offer an opinion about functional capacity" because "she considered it to be outside her area of expertise." (Doc. 13 at 4). However, Plaintiff's hypothesis is speculative; there is no indication in the record to suggest that reason. It was not unreasonable for the ALJ to interpret Dr. Krone's "not applicable" notation as additional evidence that Plaintiff's condition was "stable," and not as limited as Plaintiff claimed. In fact, just as no one has opined that Plaintiff is mentally disabled due to retardation, no treating or consulting physician has opined that Plaintiff is physically disabled.

---

[7]The ALJ misstated the December 2011 date of this exam as January 2012.

Plaintiff also very briefly argues (without citation to the appropriate Rule) that under the Grid, a claimant may be presumptively disabled if he has attained the age of 50 and is limited to unskilled sedentary work. Aside from the fact that the undersigned has found that substantial evidence exists to support the ALJ's determination that Plaintiff could have performed light work, this cursory argument ignores the fact that Plaintiff's insured status expired prior to his 50th birthday.

### b. Obesity

As part of his second claim of error pertaining to his physical impairments, Plaintiff further complains that the ALJ did not adequately consider the effects of his obesity and/or of his alleged shortness of breath.

ALJ Boylan specifically found "morbid obesity" as one of Plaintiff's "severe" impairments. (Tr. 25). Social Security regulations do not permit a finding of disability based upon obesity, for obvious reasons. According to the Centers for Disease Control and Prevention, more than one-third of all adults in the United States (34.9%) are obese, the vast majority of whom are not disabled. *See* http://www.cdc.gov/obesity/data/adult.html (accessed on May 8, 2014). Nevertheless, "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." SSR 02-1p. Therefore, SSR 02-1p requires consideration of a claimant's obesity in the assessment of whether a claimant meets or equals any particular listing, and/or in the assessment of whether she can continue to work. Similarly, SSR 96-8p generally requires an ALJ to consider the effect that obesity has upon an individual's residual functional capacity.

At Step 3 of the sequential analysis, in determining whether Plaintiff's obesity resulted in Plaintiff meeting or equaling any listing, the ALJ reasoned:

> The claimant's level of obesity was considered in making this finding, as required by Social Security Ruling 01-01p. The claimant testified that he is 71.5 inches tall and weighs 293 pounds, which equates to a body mass index (BMI) of 40.2. However, there is nothing to suggest that the level of obesity documented in this record exacerbates any of the documented conditions to the point of listing-level severity.

(Tr. 27). The ALJ also adopted the opinion of two consultants who noted Plaintiff's height and weight prior to concluding that Plaintiff still possessed the residual functional capacity to perform a range of light work. (Tr. 108, 115, 134, 142). *See Coldiron v. Com'r of Soc. Sec.*, 391 Fed. Appx. 435, 443 (6th Cir. 2010)(holding that by utilizing the opinions of physicians who acknowledged the plaintiff's obesity, the ALJ incorporated the effect of the plaintiff's obesity into the RFC). The ALJ included a number of functional limitations that, at least arguably, take into account Plaintiff's obesity. For example, the ALJ limited Plaintiff to only "occasionally" crouching, crawling, or climbing ramps or stairs, and "never" climbing ladders, ropes, or scaffolds. Plaintiff presented no argument that he suffered from any additional limitations as a result of his obesity. *See Essary v. Com'r of Soc. Sec.*, 114 Fed. Appx. 662, 667 (6th Cir. 2004)("The absence of further elaboration on the issue of obesity likely stems from the fact that [Plaintiff] failed to present evidence" of any functional limitations resulting specifically from her obesity.").

Plaintiff now asserts that the ALJ erred by failing to include additional RFC limitations relating to his obesity. But Social Security Ruling 02-1p does not mandate any "particular mode of analysis." To the contrary, historically the Sixth Circuit has required only minimal articulation at Step 3 of the sequential analysis, *see Price v.*

*Heckler*, 767 F.2d 281, 284 (6th Cir. 1985); *Bledsoe v. Barnhart*, 165 Fed. App'x 408, 412 (6th Cir. 2006)(stating that "[i]t is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants."). So long as the ALJ's decision as a whole articulates the basis for his or her conclusion, the decision may be affirmed. *See Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985).

The only specific evidence that Plaintiff presents to this Court is testimony that he concedes is "ambiguous" concerning whether he experiences breathing difficulties. Plaintiff seizes upon this limited evidence to argue that his obesity "certainly would affect his ability to breathe when walking or being active." (Doc. 9 at 17). However, Plaintiff bears the burden of proof in demonstrating that he is disabled. The testimony on which Plaintiff now relies to suggest that the ALJ should have found further limitations does not provide grounds for remand, but instead, is easily interpreted as supportive of the ALJ's decision not to include additional "breathing" limitations.

The ALJ specifically inquired of Plaintiff at the hearing, "Do you have any problems with breathing?" Plaintiff responded, "Not really. I mean, I don't breathe right, but no. I'm, I'm, you know --." (Tr. 54, emphasis added). Plaintiff's counsel had ample opportunity to question Plaintiff further regarding any allegations of breathlessness, but failed to do so. Given Plaintiff's responses to his initial inquiry, the ALJ did not err by failing to incorporate additional limitations relating to obesity and/or alleged breathlessness.

This conclusion is amplified by reference to the rest of the record, which provides strong support for the ALJ's RFC determination, without the inclusion of additional limitations relating to Plaintiff's alleged breathing difficulties. In November 2009,

Plaintiff's physical examination was normal despite his obesity (Tr. 910-912), and on exam in January 2010, no breathing difficulties were noted. (Tr. 1032). At that time, he had an oxygen saturation level of 95%. (*Id.*). In April 2011, he was noted to be breathing comfortably, with lungs clear to auscultation. (Tr. 1257-1258). In September 2011, he reported shortness of breath on exertion, but his EKG was normal and much improved. (Tr. 1229). Plaintiff reported smoking two and a half packs of cigarette each week for twenty-three years. (Tr. 397, 480), and in September 2011, Reddy Gujja, M.D., explained that Plaintiff's reported shortness of breath could be from chronic smoking. (Tr. 1297). Plaintiff continued to smoke, despite repeatedly being advised to quit. At the hearing, Plaintiff testified that he typically spent his days in bed smoking cigarettes and drinking coffee. (Tr. 56, 67).

### III. Conclusion and Recommendation

For the reasons discussed above, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** and that this case should be **CLOSED**.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MICHAEL S. BRYANT,                                          Case No. 1:13-cv-584

        Plaintiff,                                          Barrett, J.
                                                            Bowman, M.J.

   v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

### NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).